## BOYD v. BOYD.

Circuit Court, Lake County.
September 11, 1950.

L. C. McKenzie, Brooksville, for plaintiffs.

W. Troy Hall, Tavares, for defendants.

T. G. FUTCH, Circuit Judge.

This case was heard in the first instance by the late able and distinguished Judge J. C. B. Koonce, and as was his custom in those cases where stipulation had been reached between the parties relative to the custody of children, he respected such stipulation, and wrote them into the final decrees where it was not apparent that such stipulation would be detrimental to the child; but he also reserved to the court jurisdiction to make changes of custody where the the welfare of the child might so require.

In this case, by stipulation, custody of the infant son then approaching three years of age was given to the grandparents of the child on the mother's side, namely Mr. and Mrs. G. L. Abbott, of Brooksville, Florida, by final decree entered August 22, 1942.

The law in cases of this nature is that a decree of custody cannot be changed subsequently unless an alteration in conditions is shown to have arisen since the decree, or because of material facts bearing on the question of custody existing at the time of the decree, but which were unknown to the court; and then only for the welfare of the child involved.

In this case the original picture as presented to the court at the time of final decree was the wreck of the marriage of

the mother and father of the infant child; and as always, the child was the principal victim. The mother instituted the suit, and the father failed to defend. Her suit was successful. So at this late date the presumption can only be that the conduct of the father of this boy was such as to have justified the mother in seeking and securing a divorce. The mother had no home where and no money with which she could take care of the child. The father offered no assistance and did not ask custody of the child, but did agree to pay to the grandparents the sum of twenty five dollars monthly for the care of the child. This amount he has faithfully paid.

Grandpa and grandma sleep under the same roof, but do not live together as man and wife. Grandpa has a girl friend at Sulphur Springs, near Tampa, and goes on periodic drunks, and is frequently jailed on charges of drunkenness and driving while intoxicated. He has never been tried on any of these charges. Several are still pending. He has forfeited several bonds. His freedom from trial is, according to the evidence, due to political fixing. He is allowed to flaunt the law in every respect.

Grandma is shown to be a good, wholesome lady who wants to do right for all concerned. She is not in good health. She refused to say that she was not able to take care of the boy, and she refused to pass judgment upon who should have custody of the child. Hers has been a hard life. She has, she says, quit worrying about the escapades of grandpa. She is resigned to the fate of a betrayed wife. She is a lady of refinement and finds herself left stranded on the highways of life by a faithless husband.

It is argued that all these conditions prevailed when the final decree was entered placing the child in the custody of grandpa and grandma Abbott. The evidence shows that these conditions did so exist at the time of entry of the final decree, but it is not shown that these conditions were revealed to the court at that time, or that the court had any knowledge of them. Had the conditions in the Abbott home been revealed or had they been known to Judge Koonce, he would not have, in my opinion, granted custody to the Abbotts, thus subjecting the child to that sort of home life.

Even so, an infant would not be influenced by such conditions, but the infant which Judge Koonce dealt with has grown to be a boy of eleven years, approaching the adolescent stage.

His is a bright mind. He is intelligent. He knows what is going on. The court interviewed him privately. His is a boy's glory. He is the center of the stage, with the grandparents, the father, and the mother all bidding for his slightest beckoning. He gets what he wants and no questions asked. He claimed no preference—all were fine, even including the stepfather. He is on a pedestal, and he commands. Such situations are not good for a boy of his age.

There has been a change—a drastic and vital change—in the picture since the final decree was entered. An infant has advanced to a boy of eleven, the age of keen observation. He is not subjected to any effective discipline. He must for his own good be definitely anchored where he will be properly guided. His mother and stepfather promise this guidance. They should have the opportunity. Should they fail, this court will not hesitate to make another change.

Decree will be entered accordingly, providing for thirty days visitation by the boy with the father, between school terms, with right of visitation by the grandparents at reasonable times and under reasonable conditions in the Dutton home, and occasional visits by the boy to the home of the grandparents in Brooksville.